IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| H. KENNETH LEFOLDT, JR. AS TRUSTEE OF THE WHISTLER ENERGY II, LLC LITIGATION TRUST, | § § § § § | CIVIL ACTION NO. 18-5303 SECTION B |
| Plaintiff, | § § | |
| VERSUS | § § | JUDGE JANE TRICHE MILAZZO |
| SCOTT A. FRANKEL, | § § § | |
| Defendant. | § § | MAGISTRATE JUDGE JANIS VAN MEERVELD |

**REPORT AND RECOMMENDATION**

H. Kenneth Lefoldt, Jr., trustee of the Whistler Energy II, LLC Litigation Trust ("Trustee"), filed a complaint against Scott A. Frankel ("Frankel"), the former CEO and director of Whistler Energy II, LLC ("Whistler"), for breach of fiduciary duties seeking $5,000,000 in damages.[1] Frankel asks the court to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for two reasons: 1) because the facts contained within the complaint are insufficient to plead a plausible breach of fiduciary duty claim and 2) the claims are time-barred under the applicable prescriptive period.[2] Alternatively, Frankel moves for dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.[3] The United States District Court for the Eastern District of Louisiana referred this matter to the Bankruptcy Court on August 20, 2019.[4] For the following reasons, IT IS RECOMMENDED that Frankel's motion to dismiss be GRANTED IN PART and DENIED IN PART.

---

[1] (R. Doc. 1).
[2] (R. Doc. 22), at p. 1.
[3] *Id.* at pp. 1-2.
[4] (R. Doc. 27).

1

## I. Background Facts

In 2012, Frankel formed Whistler as a Delaware Limited Liability Company to purchase a dormant platform and its associated mineral leases on the Outer Continental Shelf in the Gulf of Mexico.[5] Frankel served as Whistler's Chief Executive Officer and the Chairman of its board of directors.[6] According to the Trustee's complaint, by the summer of 2013, Whistler amassed a total of $90 million from equity investments and a credit facility to purchase such assets.[7] The equity and credit agreements included an "Approved Plan of Development" based on the assumption that the initial funding would fund small scale operations that would then fund large scale drilling projects.[8] Whistler's completion of the small scale operations took longer than anticipated, exceeded budgeted costs, and failed to reach projected levels of production, resulting in a shortfall of between $80 and $95 million, which constituted the anticipated funding for the large scale drilling operations.[9] Nevertheless, Whistler undertook its first major drilling project after obtaining approximately $45 million (and later an additional $31.5 million) from its lenders.[10] This project also ran behind schedule, exceeded budgeted costs, and failed to meet production estimates, causing Whistler's supermajority equity holder, Commerce Oil, LLC ("Commerce"), to refuse to contribute any additional funding.[11]

Despite these failures and its financial condition, Whistler started its next major drilling project, the Erato Well, on November 23, 2015.[12] Frankel sought stopgap funding for the Erato

---

[5] (R. Doc. 22, ex. 3, at ¶ 5; (R. Doc. 1), at ¶ 4.
[6] (R. Doc. 1), at ¶ 4; (R. Doc. 22), ex. 3, at ¶ 4.
[7] (R. Doc. 1), at ¶ 6.
[8] *Id.* at ¶ 7.
[9] *Id.* at ¶¶ 11-13.
[10] *Id.* at ¶¶ 18, 21.
[11] *Id.* at ¶¶ 21-22, 24.
[12] *Id.* at ¶ 26.

Well and received an offer from Apollo,[13] Whistler's largest lender, for $19.6 million in immediate funding in exchange for controlling equity.[14] As a shareholder, Frankel would receive $1.1 million as a part of this restructuring transaction.[15] After reaching an agreement, a small oil sheen appeared on the water near the Whistler platform, leading the Bureau of Safety and Environmental Enforcement ("BSEE") to shut down drilling operations on Whistler's platform, delaying drilling efforts.[16] Because BSEE shut down the drilling operations, Apollo opted to postpone its funding.[17] Drilling later resumed but then a third-party vendor's employee was killed in an accident on the platform on March 10, 2016, and BSEE again shut down drilling operations on Whistler's platform.[18]

On March 24, 2016, several creditors filed an involuntary bankruptcy petition against Whistler in the bankruptcy court for the Eastern District of Louisiana.[19] Whistler eventually consented to the entry of an order for relief, which was entered on May 25, 2016.[20] On April 28, 2016, Whistler's board adopted a resolution to terminate Frankel's employment for reasons including "his persistent inability to model accurately Whistler's budgets or production levels along with his gross mismanagement of Whistler's finances."[21] The bankruptcy court confirmed Whistler's plan of reorganization on January 25, 2017. A litigation trust was created in connection with the plan of reorganization confirmed by the bankruptcy court and H. Kenneth Lefoldt, Jr. was

---

[13] "Apollo" refers to a number of affiliated entities that included Apollo Franklin Partnership, L.P., Apollo Centre Street Partnership, L.P., Apollo Special Opportunities Managed Account, L.P., Apollo Credit Opportunity Fund III AIV I LP, and ANS Holdings (WE), Ltd. (R. Doc. 1) at ¶ 28, n. 1.
[14] (R. Doc. 1), at ¶¶ 28-30.
[15] *Id.* at ¶ 28.
[16] *Id.* at ¶¶ 29-31, 138.
[17] *Id.* at ¶ 139.
[18] *Id.* at ¶¶ 36, 143.
[19] *Id.* at ¶¶ 44, 143.
[20] *Id.* at ¶ 45.
[21] *Id.* at ¶ 144.

named as the litigation trustee.[22] Lefoldt filed this suit against Frankel on May 24, 2018 in the district court for the Eastern District of Louisiana alleging breach of fiduciary duties.[23]

## II. Jurisdiction

### A. FRCP 12(b)(1)

Frankel raises a defense under Federal Rule of Civil Procedure 12(b)(1), disputing this court's subject matter jurisdiction. The Trustee argues that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) which grants district courts and adjunct bankruptcy courts the authority "to entertain proceedings 'arising under,' 'arising in a case under,' or 'related to' a case under Title 11 of the United States Code, i.e., proceedings 'related to' bankruptcy."[24]

In *In re Dune Energy*, the court held that it had "related to" jurisdiction over a suit alleging director and officer misconduct where the plaintiff was a plan trustee "empowered to pursue and collect on the [d]ebtors' causes of actions . . . and to distribute any net recoveries to pay creditors of the [d]ebtors under the plan."[25] In its analysis of "related to" jurisdiction, it referred to three factors from the Fifth Circuit's opinion in *In re Enron*: whether (1) the claims primarily arise from pre or post-confirmation relations between the parties; (2) any claims or antagonisms were pending between the parties on the date of plan confirmation; and (3) any facts or law deriving from the bankruptcy are necessary to the claims.[26] Applying such factors, the court held that it could exercise related to jurisdiction because "the claims in the [s]uit ar[ose] entirely from pre-confirmation actions allegedly taken (or not taken) by [d]efendants," "antagonism existed with

---

[22] (R Doc. 22), ex. 2.
[23] (R. Doc. 1).
[24] *In re Bass*, 171 F.3d 1016, 1022 (5th Cir. 1999).
[25] *In re Dune Energy, Inc.*, 575 B.R. 716, 720, 725-26 (Bankr. W.D. Tex. 2017).
[26] *Id.* at 725.

[d]efendants prior to confirmation of the Plan," and "any net recoveries made by [p]laintiff on these claims will affect distributions to creditors under the Plan."[27]

Similar to *In re Dune Energy*, Article VI of Whistler's Plan of Reorganization provides that all causes of action possessed by the debtor are vested in the reorganized debtor and subsequently transferred to the Litigation Trust.[28] The Litigation Trustee has the authority to pursue such causes of action to bring assets into the reorganized debtor.[29] Applying the three factors from *Enron*, we find that (1) the claims arise from pre-confirmation actions taken by Frankel, (2) antagonism existed because the Frankel claims were specifically reserved in the plan, and (3) any recoveries made by the Trustee on the Frankel claims will enhance distributions to Whistler's creditors under the Plan. Whistler's plan also retains the bankruptcy court's jurisdiction over "any and all adversary proceedings" arising out of the Plan.[30]

Additionally, the Fifth Circuit requires that claims must be retained by the plan for reorganization in order to maintain standing post-confirmation.[31] Here, Whistler's plan preserves "the Frankel Claims," defined as "all potential Causes of Action held by the Debtor and Debtor in Possession against the Debtor's former Chief Executive Officer and member of the Board of Managers, Scott A. Frankel."[32] Therefore, the court finds that it has related-to jurisdiction in this case.

### B. FRCP 12(b)(2)

Frankel's motion to dismiss also raises a defense under Federal Rule 12(b)(2), seeking dismissal because of a lack of personal jurisdiction.[33] The plaintiff has the burden of making a

---

[27] *Id.* at 726.
[28] (R. Doc. 22), ex. 2, at p. 82.
[29] *Id.* at pp. 90-91.
[30] *Id.* at pp. 94-96.
[31] *In re MPF Holdings US LLC*, 701 F.3d 449, 453-54 (5th Cir. 2012).
[32] (R. Doc. 22), ex. 2, at p. 59.
[33] Fed. R. Civ. P. 12(b)(2).

5

prima facie showing of personal jurisdiction when challenged by a 12(b)(2) motion.[34] Personal jurisdiction may be exercised by a federal district court over a non-resident defendant if the forum state's long-arm statute "confers personal jurisdiction over the defendant" and the exercise of personal jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment.[35] To determine questions of personal jurisdiction, courts ask 1) whether there is statutory authority for the exercise of jurisdiction under the laws of the forum state, and 2) if the exercise of jurisdiction would comply with due process.[36]

Louisiana's long-arm statute allows courts to exercise personal jurisdiction to the full extent of the due process clause.[37] The Due Process Clause of the Fourteenth Amendment serves to protect individuals from "the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[38] It permits the exercise of personal jurisdiction over nonresident defendants when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"[39] The "minimum contacts" determination can be divided into contacts that establish specific jurisdiction and those that establish general jurisdiction.[40] General jurisdiction provides a court with personal jurisdiction over a defendant even though his or her contacts are unrelated to the cause of action when the defendant has "continuous and systematic"

---

[34] *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).
[35] *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).
[36] *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985).
[37] LSA-R.S. 13:3201; *Growden v. Ed Bowlin and Associates, Inc.*, 733 F.2d 1149, 1150 (5th Cir. 1984).
[38] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (1985) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316. (1945)).
[39] *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).
[40] *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

contacts with the forum state.[41] An individual defendant's contacts with a state are "continuous and systematic" for general jurisdiction when the defendant is a resident of that state.[42] A court may exercise specific jurisdiction over a nonresident defendant when he or she "purposefully directed" his or her activities at the forum state and the "suit aris[es] out of or [is] related to the defendant's contacts with the forum."[43]

The personal jurisdiction inquiry is affected by the presence of related-to jurisdiction because it results in the application of "the entire body of the Federal Rules of Bankruptcy Procedure."[44] It also affects the personal jurisdiction inquiry because related to bankruptcy jurisdiction constitutes federal question jurisdiction. If a district court exercises federal question jurisdiction and the underlying matter stems from a federal statute providing for nationwide service of process, "the personal jurisdiction inquiry does not require a state long arm statute."[45] Instead of analyzing the defendant's minimum contacts with the forum state, "the relevant inquiry is whether the defendant has had minimum contacts with the United States."[46] Because the federal rules of bankruptcy procedure provide for a nationwide service of process, specifically Rule 7004(f), "this Court will look to the Defendants' minimum contacts with the United States to determine whether the exercise of personal jurisdiction over the Defendants is proper."[47] The exercise of personal jurisdiction in such context "does not offend the constitutional due process right because the citizen

---

[41] *Religious Technology Center v. Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003) (quoting *Central Freight Lines v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003)).
[42] *Id.* at 374.
[43] *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).
[44] *Lentz v. Trinchard*, 730 F. Supp. 2d 567, 577 n.33 (E.D. La. 2010) (citing *In re Celotex Corp.*, 124 F. 3d 619, 629 (4th Cir. 1997); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F. 3d 1228, 1236-37 (3rd Cir. 1994).
[45] *Redhawk Global, LLC v. World Projects Int'l*, 495 B.R. 368, 373 (S.D. Ohio 2013).
[46] *In re L.D. Brinkman Holdings, Inc.*, 310 B.R. 686, 688 (Bankr. N.D. Tex. 2004) (quoting *Busch v. Buchman, Buchman & O'Brien Law Firm*, 11 F. 3d 1255, 1257 (5th Cir. 1994)).
[47] Fed. R. Bankr. P. 7004(d); *Redhawk Global, LLC v. World Projects Int'l*, 495 B.R. 368, 373 (S.D. Ohio 2013).

7

has a sufficient relationship with the sovereign asserting jurisdiction—the United States."[48] This is further supported by the language of the Bankruptcy Rules. Specifically, Bankruptcy Rule 7001 states that "adversary proceeding[s] [are] governed by the rules of" Part VII of the Bankruptcy Code, which encompasses Rule 7004.[49]

Applying these tenets to the present matter, we find that this court may properly exercise personal jurisdiction over Frankel. Frankel has sufficient contacts with the United States because he is domiciled in Texas and was served with process consistent with Bankruptcy Rule 7004(f).[50] Therefore, Frankel's motion to dismiss for lack of jurisdiction is denied.

## III. The 12(b)(6) Motion

### A. Motion to Dismiss for Failure to State a Claim

A motion filed pursuant to Federal Rule of Civil Procedure 12(b)(6) seeks dismissal on the basis of an opposing party's "failure to state a claim upon which relief can be granted."[51] To avoid dismissal, the challenged "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[52] A claim is plausible on its face if it contains "factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged."[53] If the complaint does not state a plausible claim for relief, courts usually grant leave to amend to cure the deficiency, "unless it is clear that the defects are incurable

---

[48] *Redhawk Global, LLC*, 495 B.R. at 373 (S.D. Ohio 2013) (citing *Med. Mut. of Ohio v. deSoto*, 245 F. 3d 561, 567-68 (3rd Cir. 2005)).
[49] *Id.* at 377.
[50] (R. Doc. 22), ex. 3, ¶3; Fed. R. Bankr. P. 7004.
[51] Fed. R. Civ. P. 12(b)(6).
[52] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[53] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S., at 556).

or the plaintiffs advise the court that they were unwilling or unable to amend in a manner that will avoid dismissal."[54] Such motions "[are] viewed with disfavor and [] rarely granted."[55]

### 1. Choice of Law

In a diversity action, the law of the forum state governs choice-of-law decisions.[56] Louisiana law provides that the law of the state of incorporation "governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties."[57] Here, Whistler was organized as a limited liability company pursuant to the laws of the State of Delaware.[58] Delaware law presumes that corporate directors and officers make business decisions on an informed basis, in good faith, and with the honest belief that the action taken was in the company's best interest.[59] This presumption is known as the business judgment rule and it "prevents a judge or jury from second guessing director decisions if they were the product of a rational process and the directors availed themselves of all material and reasonably available information."[60] Courts are prohibited from questioning the judgment of directors and officers unless the plaintiff rebuts the presumption by showing that an officer or director "violated any one of its triad of fiduciary duties: due care, loyalty, or good faith."[61]

---

[54] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).
[55] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (*citing Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)); *Lowrey v. Texas A & M University System*, 117 F.3d 242, 247 (5th Cir. 1997).
[56] *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65 (2013); *Energy Coal v. CITGO Petroleum Corporation*, 836 F.3d 457, 459 (5th Cir. 2016); Even if this case were brought in Texas, the analysis would largely remain the same as Delaware law would still apply *Askanase v. Fatjo*, 130 F.3d 657, 670 (5th Cir. 1997) (citing *Maher v. Zapata Corp.*, 714 F.2d 436, 464 (5th Cir. 1983)).
[57] *TMJ Group LLC v. IMCMV Holdings Inc.*, 311 F.Supp.3d 834, 859 (E.D. La. 2018) (citing *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 385, n.7 (5th Cir. 2009)).
[58] (R. Doc. 1), at ¶ 59.
[59] *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).
[60] *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 124 (Del. Ch. 2009).
[61] *Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001).

Because the business judgment rule is an affirmative defense, courts generally do not rely on it at the motion to dismiss stage unless the issue appears on the face of the complaint.[62] If an issue involving business judgment appears on the face of the complaint, the plaintiff must "plead around the business judgment rule" and demonstrate that it "does not vitiate any of his claims" by showing that his or her claims rebut the presumptions of the rule.[63] Under Delaware law, a plaintiff must plead factual content "that allows the court to draw the reasonable inference that in making the challenged decision, the directors or officers breached their [fiduciary] duties" to state a claim for breach of fiduciary duty that is plausible on its face.[64]

2. **Duty of Care**

   a. **Legal Standard**

Directors and officers have the same fiduciary duties under Delaware law.[65] The duty of care requires directors and officers to exercise an "amount of care which ordinarily careful and prudent men would use in similar circumstances and consider all material information reasonably available."[66] The business judgment rule presumes a director or officer acted with due care when making a decision of business judgment, unless the plaintiff demonstrates that the director was uninformed.[67] Challenging a decision as uninformed requires the plaintiff to show that the director did not "inform [himself or herself] . . . of all material information reasonably available," based on

---

[62] *See In re W.J. Bradley Mortgage Capital*, 598 B.R. 150, 164 (Bankr. D. Del. 2019).
[63] *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3rd Cir. 2005).
[64] *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 680 (N.D. Tex. 2011) (applying Delaware law).
[65] *Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009).
[66] *In re Walt Disney Co. Derivative Litigation*, 907 A.2d, 693, 749 (Del. Ch. 2005), aff'd, 906 A.2d 27 (Del. 2006) (quoting *Graham v. Allis-Chalmers Mfg. Co.*, 199 A.2d 125, 130 (Del. 1963)).
[67] *See In re Walt Disney*, 907 A.2d at 749, aff'd, 906 A.2d 27 (Del. 2006).

a gross negligence standard.[68] Proving gross negligence in this context "generally requires that officers, directors, and managers fail[ed] to inform themselves fully and in a deliberate manner."[69]

### b. Count 1

The first count targets Frankel's decision to drill the Erato Well.[70] The complaint alleges Frankel failed to consult his technical team before deciding to drill the Erato Well and "ignor[ed] or fail[ed] to undertake a meaningful analysis" of Whistler's funding issues, the assumptions of the [Approved Plan of Development], the success of its prior projects, and the feasibility of the Erato Well.[71] The plaintiff claims that "Frankel never convened a meeting of the Board of Managers, or met with the other members of senior management, to discuss whether Whistler should or could move on to the Erato Well."[72]

Additionally, the complaint alleges Frankel failed to consider alternatives to the Erato Well. Specifically, it states "[Frankel] failed to consider other, less costly projects proposed by Commerce that, consistent with the strategic direction of the Approved Plan of Development, could have generated tangible increases in production."[73] It claims Frankel failed to give such options "any meaningful consideration, whether through modeling, forecasting, or even a simple discussion" because "[he] never convened a meeting of the Board of Managers, or met with the other members of senior management, to discuss whether Whistler should or could move on to the Erato Well."[74] In *Smith v. Van Gorkom*, the Delaware Supreme Court held that the board was

---

[68] *Smith v. Van Gorkom*, 488 A.2d 858, 872-73 (Del. 1985).
[69] *In re Fedders N. Am., Inc.*, 405 B.R. 527 (Bankr. D. Del. 2009) (citing *Cede & Co.*, 634 A.2d 345, 368 (Del. 1993).
[70] (R. Doc. 1), at p. 30.
[71] *Id.* at ¶¶ 155, 157.
[72] *Id.* at ¶ 113.
[73] *Id.* at ¶ 158.
[74] *Id.* at ¶ 113.

"grossly negligent in approving the 'sale' of the Company upon two hours' consideration, without prior notice, and without the exigency of a crisis or emergency."[75] It reasoned that the directors were uninformed because they lacked the information required to make an informed business judgment about the sale of the company.[76] The case at bar is similar to *Van Gorkom*, because taking the Trustee's allegations as true, the board lacked the proper information to make an informed business judgment about the Whistler's strategic direction. The complaint alleges that before drilling the Erato Well, Frankel failed to consider the feasibility of Commerce's alternative proposals and therefore failed to "inform[] [himself] . . . of all material information reasonably available."[77] Taken as true, these allegations support a reasonable inference that Frankel breached the duty of care. Therefore, the Trustee has sufficiently pled that Frankel was uninformed when deciding to drill the Erato Well, and has stated a claim against Frankel for breach of the duty of care as to Count 1. As a result, the Trustee's claims against Frankel for breach of the duty of care as to Count 1 should not be dismissed.

   **c. Count 2**

Count 2 of the complaint alleges Frankel breached the duty of care with respect to the failed "Restructuring Transaction." After drilling on the Erato Well had begun, it was clear that Whistler was in significant financial distress. There were discussions between Apollo, Commerce and Frankel to explore an out of court restructuring whereby Apollo would provide approximately $20 million in funding, and in turn receive Commerce's supermajority interest in Whistler. Under the agreement, Commerce would retain some equity in Whistler. In March 2014, Commerce had entered into an agreement to purchase Frankel's minority interest in Whistler for $4.5 million,

---

[75] *Van Gorkom*, 488 A.2d at 874.
[76] *Id.*
[77] *Id.* at 872 (quoting *Aronson v. Lewis*, 473 A.2d 805, 812) (internal quotations omitted).

which would be due sometime in 2017, contingent upon Frankel's shares becoming vested if certain production goals were met. As part of the restructuring agreement, Commerce would instead pay Frankel $1.1 million, and he would release his claim to the $4.5 million due in 2017. The Trustee alleges that because of his interest in this transaction, Frankel failed to investigate other financing options that may have been just as or more beneficial to the debtor. Additionally, once the parties executed the restructuring agreement on December 29, 2015, Apollo was supposed to immediately provide the $20 million to Whistler. An oil sheen was discovered in the water next to the platform at this same time, however, and the Bureau of Safety and Environmental Enforcement ("BSEE") shut down all drilling on the Erato platform. Because of the shutdown, Apollo did not actually give the funds to Whistler. The Trustee's complaint alleges that although Frankel consulted an attorney about taking legal action to force Apollo to advance the funds due under the agreement, he chose not to take such action. He did, however, pursue enforcement of another part of the agreement and received the $1.1 million payment from Commerce for his shares in Whistler.

The Court finds that taken as true, the Trustee's complaint as to the failure to investigate other financing options rather than enter into the deal with Apollo and Commerce states a claim that Frankel failed to avail himself of all information. Therefore, the Trustee has sufficiently pled that Frankel was uninformed when deciding to drill the Erato Well, and has stated a claim against Frankel for breach of the duty of care as to Count 2.

As to the decision not to pursue Apollo for failure to fund the restructuring agreement, Delaware law states that "[t]he duty of care relates to the *process* by which a board of directors

makes a decision," not the decision itself.[78] Even if the court assumes such allegation challenges Frankel's decision-making process, the facts in the complaint precludes the inference that such decision was uninformed. Such a conclusion is forgone because the complaint states that Frankel consulted with Whistler's attorney about the situation and obtained a legal opinion regarding Apollo's obligation to pay, and thus "actively considered the issue."[79] Therefore, as to this part of Count 2, the Trustee fails to state a claim for breach of the duty of care against Frankel and the motion to dismiss should be granted on this part of the complaint.[80]

### 3. Duty of Loyalty

#### a. Legal Standard

The duty of loyalty prohibits directors and officers from "us[ing] their position of trust and confidence to further their private interests."[81] It also requires that they act "affirmatively to protect the interests of the corporation committed to [their] charge, . . . [and] to refrain from doing anything that would work injury to the corporation, or to deprive it of profit or advantage which his skill and ability might properly bring to it, or enable it to make in the reasonable and lawful exercise of its powers."[82] The business judgment rule presumes a director or officer did not breach the duty of loyalty unless the plaintiff demonstrates that "the board was either interested in the outcome of the transaction or lacked the independence to consider objectively whether the transaction was in the best interest of its company and all of its shareholders."[83] A director or officer is "interested" if he

---

[78] *In re NCS Healthcare, Inc., Shareholders Litigation*, 825 A.2d 240, 257 (Del. Ch. 2002) (emphasis added) (citing *Brehm v. Eisner*, 746 A.2d 244, 264 (Del. 2000)).
[79] (R. Doc. 1), ex. 1, at p. 12.
[80] *Mukamal v. Bakes*, 378 Fed. App'x. 890, 902 (11th Cir. 2010) (affirming trial court's 12(b)(6) dismissal of Delaware duty-of-care claim because "[h]ere, the [defendants] discharged their obligations under the duty of care by hiring consultants and by considering the consultants' advice, even if they did not follow the advice.").
[81] *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (1939); *Gantler v. Stephens*¸ 965 A.2d 695, 709 (Del. 2009) ("[T]he fiduciary duties of officers are the same as those of directors.").
[82] *Guth*, 5 A.2d at 510.
[83] *Orman v. Cullman*, 793 A.2d 5, 22 (Del. Ch. 2002).

14

or she appears on both sides of a transaction or will derive "any personal financial benefit" not shared with the company.[84] A director or officer "lacks independence" if his decision is based on extraneous considerations or influences rather than corporate merits.[85]

### b. Count 1

The complaint alleges Frankel's decision to drill the Erato Well breached the duty of loyalty because it favored Apollo over Whistler and "would substantially increase the value of the Asset securing Apollo's note" to Whistler's detriment. To prove a breach of the duty of loyalty, plaintiffs must show that the director or officer was interested in the transaction or lacked independence when deciding on the transaction.[86] Here, the complaint contains no set of facts that would allow this Court to infer that Frankel had an interest or lacked independence when deciding to drill the Erato Well. It merely alleges that Frankel "failed to separate Whistler's interest from Apollo's" and "adopt[ed] a strategy that elevated Apollo's desired outcome over what was best for Whistler."[87] These conclusory statements do not contain the requisite facts to withstand a motion to dismiss. Therefore, the Trustee has failed to state a claim for breach of the duty of loyalty against Frankel as to Count 1 and it should be dismissed.

### c. Count 2

The Trustee also alleges Frankel breached the duty of loyalty by entering into the restructuring agreement with Apollo and Commerce from which Frankel would personally benefit, particularly because he failed to explore other alternatives. He also failed to pursue action against Apollo when it failed to fund the $20 million under the agreement executed on December 29, 2015. The Trustee claims that because "he personally stood to receive a $1.1 million personal payday in the event the

---

[84] *Aronson*, 473 A.2d at 812.
[85] *Cede & Co.*, 634 A.2d 345, 362 (Del. 1993), decision modified on reargument, 636 A.2d 956 (Del. 1994).
[86] *Orman*, 794 A.2d at 22.
[87] (R. Doc. 1), at ¶¶ 159, 160.

15

restructuring transaction went through," Frankel's duty of loyalty was breached.[88] In his brief filed in support of his motion, Frankel argues that this lacks factual support because the restructuring transaction was finalized on December 29, 2015 and included "Commerce's $1.1 million payment commitment."[89] The Trustee's allegations, taken as true, contain enough facts to allow the court to reasonably infer that Frankel may not have been disinterested in the restructuring transaction from which he received $1.1 million in exchange for his shares. Therefore, the Trustee has sufficiently pled that Frankel may have had an interest such that he breached his duty of loyalty and has stated a claim against Frankel for breach of the duty of loyalty as to Count 2.

### B. Statute of Limitations

#### 1. Legal Standard

A motion filed pursuant to Rule 12(b)(6) may also seek dismissal on the basis of a statute of limitations "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[90] Louisiana law requires the application of its "prescription and preemption law" in diversity actions, unless the action would not be barred in the other state and "maintenance of the action in [Louisiana] is warranted by compelling considerations of remedial justice."[91] In relevant part, the prescription period under Louisiana law depends on whether the claim constitutes gross negligence or rises to the level of a breach of a fiduciary duty.[92] Claims alleging a breach of the duty of due care as a result of gross negligence constitute delictual actions and are subject to a one year prescriptive period.[93] Claims for the breach of fiduciary duty require showings of "fraud, a breach of trust, or other ill acts" and are subject to

---

[88] *Id.* at ¶ 169.
[89] (R. Doc. 22), ex. 1, at pp. 17-18.
[90] *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2009) (citations omitted).
[91] La. Civ. Code Ann. Art. 3549.
[92] *See Gerdes v. Estate of Cush*, 953 F.2d 201, 204 (5th Cir. 1992).
[93] *See F.D.I.C. v. Barton*, 96 F.3d 128, 133-34 (5th Cir. 1996).

a ten year prescriptive period.[94] Section 108 of the Bankruptcy Code acts as a tolling provision and provides trustees with an additional two years to bring actions that the debtor could have brought under non-bankruptcy law if "such period has not expired before the date of the filing of the [bankruptcy] petition."[95] Thus, Section 108 "extend[s] the prescription period for prepetition claims to two years after the entry of the order for relief."[96]

### 2. Analysis

#### a. Duty of Care

In the present case, the allegations against Frankel that allege a breach of the duty of care are most accurately classified as fiduciary breaches because Delaware applies a gross negligence standard when evaluating breaches of the duty of care. As a result, the duty of care claims are subject to a one year prescriptive period. However, Section 108 of the Bankruptcy Code extends the prescriptive period to two years after the order for relief. Because the order for relief in this case was entered on May 25, 2016, Section 108 extended the prescriptive period to May 25, 2018.[97] The complaint in question was filed on May 24, 2018, thus the duty of care claims have not prescribed.[98]

#### b. Duty of Loyalty

The Trustee's duty of loyalty claims against Frankel are better characterized as claims alleging breaches of fiduciary duties for purposes of applying Louisiana's prescriptive periods. A breach of fiduciary duty under Louisiana law requires showings of "fraud, a breach of trust, or other ill acts." Because a breach of the duty of loyalty under Delaware law occurs when a director or officer

---

[94] *See id.* at 133.
[95] *See* 11 U.S.C.A. §108(a); 2 Collier on Bankruptcy ¶ 108.01; *In re Greater Southeast Community Hospital Corp.*, 333 BR 506, 535-36 (D.D.C. 2005).
[96] *Matter of Phillip*, 948 F.2d 985, 986-87 (5th Cir. 1991) (citing *In re Northern Specialty Sales, Inc.*, 57 B.R. 557, 559 (Bankr. D. Or. 1986)).
[97] (R. Doc. 1), at ¶ 45.
[98] (R. Doc. 1).

17

takes advantage of their position of trust and confidence as an officer or director to further private interests, it constitutes a fiduciary breach. As a result, the Trustee's duty of loyalty claims are subject to ten-year prescriptive periods. Because ten years have not elapsed since Whistler terminated Frankel on April 28, 2016, the Trustee's duty of loyalty claims against Frankel have not prescribed.

## IV. Venue

### A. Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Prodcedure 12(b)(3) seeks dismissal based on improper venue.[99] Venue is governed by 28 U.S.C. § 1391, which in subsection (b)(2) states that civil actions may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[100] Frankel argues that none of the acts or omissions alleged by the Trustee occurred in the Eastern District of Louisiana. Additionally, 28 U.S.C. § 1391(b)(2) provides that venue is proper "in—a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."[101] For "proceeding[s] . . . related to a case under title 11," 28 U.S.C. § 1409(a) provides that they "may be commenced in the district court in which such case is pending."[102] The Bankruptcy Case is "the umbrella under which all of the proceedings which follow the filing of a bankruptcy petition take place."[103]

---

[99] Fed. R. Civ. P. 12(b)(3).
[100] 28 U.S.C. § 1391.
[101] 28 U.S.C. § 1391.
[102] 28 U.S.C. § 1409.
[103] *In re Harnischfeger Indus., Inc.,* 246 B.R. 421, 432 (N.D. Ala. 2000).

18

**B. Analysis**

As noted by the Trustee, the areas of the Outer Continental Shelf occupied by Whistler are considered within Louisiana.[104] Because the subject of the suit concerns Whistler and its drilling projects on the Outer Continental Shelf, "a substantial part of the events . . . or a substantial part of property that is the subject of the action" is in Louisiana, rendering venue proper under 28 U.S.C. § 1391(b). Additionally, venue is proper under 28 U.S.C. § 1409(a) because the bankruptcy case is still pending. The main bankruptcy case still has pending a matter related to an administrative claim which is on remand for reconsideration. There are also two adversary proceedings still pending.[105] Therefore, because there are still matters before the Bankruptcy Court, venue is proper pursuant to 28 U.S.C. § 1409(a).

**V. Conclusion**

For the above stated reasons,

**IT IS RECOMMENDED** that defendant's Motion to Dismiss for Failure to State a Claim be GRANTED as to the duty of loyalty claims stated in Counts 1 the part of the duty of care claim stated in Count 2 that Frankel failed to take action against Apollo to enforce the restructuring agreement. The motion should be DENIED as to the duty of care claims in Count 1 and the remainder of Count 2, as well as the duty of loyalty claim in Count 2. Additionally, it is recommended that defendant's Motion to Dismiss for prescription of the claims, lack of personal jurisdiction and improper venue be DENIED.

---

[104] (R. Doc. 11), p. 12.
[105] *Id.* at pp. 11-12.

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, April 6, 2020.

*[signature]*
Jerry A. Brown
U.S. Bankruptcy Judge